**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-00972-RM-KMT

TERRY A. STOUT, an individual,

Plaintiff,

v.

GYRODATA, INC., a Texas corporation,

Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment (ECF No. 36) (the "Motion"). Plaintiff Terry A. Stout ("Plaintiff") brings this action against his former employer, Defendant Gyrodata, Inc. ("Defendant"), alleging wrongful termination, breach of contract and related claims. For the reasons set forth below, Defendant's Motion is GRANTED.

## I. JURISDICTION AND LEGAL STANDARD

This litigation is before the Court on the basis of its diversity jurisdiction, having been removed from state court on April 12, 2012. (ECF No. 1.)

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether

the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132, 1136 (10th Cir. 2000). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. FACTS AND PROCEDURAL HISTORY

The relevant facts, taken in the light most favorable to Plaintiff, are as follows: Defendant "is a privately held oil service company" that adapts "aerospace guidance technology for applications in wellbore surveying for the oil and gas industry." (ECF No. 37-2 at 5.) Plaintiff was employed by Defendant beginning in June of 2006 as a field engineer. (ECF No. 38 at 4.) When hired, Plaintiff received an employee handbook, which stated that the employment relationship was "at will." (ECF No. 37-2 at 7.) It further stated that "Gyrodata may terminate an employee's employment at any time, with or without cause and with or without notice, consistent with applicable law." *Id*. at 7-8. It later reiterated the point in stating "[a]s mentioned elsewhere in this handbook, either you or Gyrodata may terminate the employment relationship at any time, with or without cause and with or without notice." *Id.* at 18.

Plaintiff signed Defendant's "Employee Acknowledgment" form, which stated that: "I understand that I may resign or be terminated by Gyrodata at any time with or without advance notice or requirement of cause. I acknowledge that any employment will be…at the will of the Company, and that I have not been guaranteed continued employment." (ECF No. 37-4 at 1.)

Plaintiff said he understood this "to mean that he could be terminated at any time with or without notice, but only so long as said termination did not violate local, state, or federal law." (ECF No. 38 at 4; ECF No. 37-1 at 41 ("Stout Dep.").)

Plaintiff received several promotions during his time of employment with Defendant, also serving as a senior engineer, manager, and operations coordinator. (Stout Dep. at 9:3-12:7.) As operations coordinator, he "was responsible for coordinating projects for Gyrodata to survey wells in the Rocky Mountain region, and ensuring the logistics of such assignments." (ECF No. 3 at 2 ("Complaint").) He was also responsible for ensuring that his crew was appropriately trained and certified. (Stout Dep. at 17:20-18:14.)

Defendant performed numerous "confined space" jobs on behalf of its clients in Colorado and Wyoming. (ECF No. 38 at 5.) "Confined space" is a term of art derived from safety regulators including the Occupational Safety & Health Administration ("OSHA"), which refers to an enclosed area with limited access, which can be dangerous, such as the interior of a storage tank or a well. OSHA promulgates standards which regulate work performed in confined space. While Plaintiff was working for Defendant, his crew was "required to survey wells which required confined space entry." (Complaint at 2.)

While working for Defendant, Plaintiff alleges that he had safety concerns regarding the work required of staff. Chief among these were concerns related to confined space issues.[1] (Complaint at 2.) Plaintiff says that "the individuals whom he supervised had neither the requisite training, nor the proper equipment in order to carry out the surveys requiring confined

[1] Plaintiff's Complaint details his complaints exclusively in terms of confined space issues. In his Response, he says he also complained of long driving hours, and lack of specialized air testing and retrieval equipment. (ECF No. 38 at 13.)

space entry." *Id*. Plaintiff communicated his concerns to his employer on numerous occasions, verbally and via email, beginning in 2009, but while there was some limited confined space training for his crew, Plaintiff says that his requests for additional training and equipment for confined space entry were "flatly denied." *Id*. at 4. In April 2011, Plaintiff sent an email to a superior "requesting permission to buy certain equipment, including but not limited to the following: a device to test the air quality in confined spaces to ensure acceptable levels of poisonous gas, a hoist and winch, and climbing belts." *Id*. The final denial of Plaintiff's requests occurred in May 2011. *Id*.

Plaintiff says that he "received multiple promotions, steady pay increases and no negative performance reviews, or any written reprimands throughout the five (5) years in which he was employed by Defendant." (ECF No. 38 at 14.) However, in June 2011, Plaintiff received a verbal warning "in connection with an accident involving a Wireline truck driven by another Gyrodata employee that occurred in May 2011," in which a plate on one of his crew member's trucks came loose and smashed through the passenger-side front window of a following car. (ECF No. 38-4 at 5, ECF No. 37 at 7.) Plaintiff avers that he was never told that the plate needed repairs, and that the driver of the truck was not terminated in connection with the accident. *Id*. Following the plate incident, the condition of the Wireline trucks was investigated, and Gyrodata concluded that the trucks were not being properly maintained, which was part of Plaintiff's job responsibilities. (ECF No. 37 at 7-8; ECF No. 37-6 at 5.)

In August of 2011, Defendant fired Plaintiff, citing "poor job performance." (ECF No. 37 at 8.)

## III. ANALYSIS

Plaintiff's Complaint sets forth four claims for relief: (1) wrongful discharge based on violation of public policy (whistleblowing), (2) breach of implied contract of employment, (3) promissory estoppel, and (4) breach of the covenant of good faith and fair dealing. Defendant bases its Motion on two main arguments: first, that "OSHA" has sole jurisdiction over Plaintiff's whistleblowing claim; and second, that Plaintiff's employment was at will, without a contract, and therefore he cannot recover for his termination under his various common law theories.

### A. Wrongful Discharge Based on Violation of Public Policy

Defendant argues that Plaintiff is precluded from seeking relief in this Court for wrongful discharge because OSHA has sole jurisdiction over Plaintiff's first claim for relief. (ECF No. 37 at 15.) Plaintiff responds that "the statutory remedy available under OSHA…does not apply to Plaintiff," and that the OSHA statute is not meant to "otherwise prevent an aggrieved party from suing an employer for illegal conduct." (ECF No. 38 at 2.) This Court agrees with the Defendant.

"Colorado law is clear that a separate public policy wrongful discharge claim is not available where the statute at issue provides a wrongful discharge remedy." *Miles v. Martin Marietta Corp*., 861 F. Supp. 73, 74 (D. Colo. 1994) (citing cases); *Corbin v. Sinclair Mktg*., 684 P.2d 265, 267 (Colo. App. 1984). Section 660(c) of the OSHA statute provides a clear remedy:

> **(1)** No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

> **(2)** Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

29 U.S.C.A. § 660 (West). Plaintiff claims that he "was fired for reporting safety concerns and stressing the importance of necessary training and equipment for his crew members in compliance with OSHA regulations, in addition to other safety issues that violated local, state and federal laws." (ECF No. 38 at 22.) In other words, he was attempting to, to paraphrase Section 660(c), exercise the rights afforded him by OSHA on behalf of himself and others. If, as he claims, he was terminated because of such exercise, the statute provides a remedy—he should have reported it to OSHA. Colorado courts (as opposed to Kansas courts, which Plaintiff relies upon by citing *Flenker v. Willamette Industries, Inc.*, 162 F.3d 1083 (10th Cir. 1998)) expressly disallow tort remedies for wrongful discharge in violation of public policy "where a statute provides a wrongful discharge remedy." *Caspar v. Lucent Technologies, Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003). *See also Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 107, n. 5 (Colo. 1992).

Plaintiff claims that he "does not have the statutory remedy available to him" because "at the time of his termination, Plaintiff had not filed a complaint with OSHA, nor instituted any proceedings under OSHA." (ECF No. 38 at 23.) This position misreads the statute. The

statute's anti-retaliation provision requires that employees who think they have been discriminated against or wrongfully discharged because of their exercise of OSHA rights to file a complaint within 30 days. It is not required that an employee *have already* filed such a complaint with OSHA at the time of their discharge. This Court concludes that Plaintiff had the statutory remedy available to him at the time of his discharge, and his failure to exercise it does not render his claim valid under Colorado law.

Plaintiff also claims that OSHA does not provide a complete remedy for him. (ECF No. 38 at 21.) A plain reading of the statute itself makes clear that Plaintiff's argument is unavailing. OSHA's anti-retaliation provision offers a remedy of "all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay," and given that Plaintiff's chief complaint—confined space entry— is agreed by both parties to be governed by OSHA, it is clear that he was required, under Colorado law, to seek relief under OSHA.

In attempting to avoid the thrust of Defendant's arguments, Plaintiff notes that he voiced other complaints related to a variety of issues and submits an affidavit and other evidence to that effect. These can be loosely categorized as complaints related to working long hours and driving long distances. However, his Complaint alleges only violations that pertain to the confined space issues. Time after time, his Complaint makes clear that his concern was confined space. (*See, e.g.*, Complaint at 2 ("Plaintiff was concerned that the individuals whom he supervised had neither the requisite training, nor the proper equipment in order to carry out…confined space entry."); at 3 ("Plaintiff [was told] to refrain from performing surveys requiring confined space entry…"); at 4 ("[Plaintiff was told that] the company wouldn't be providing confined space entry training…"); at 5 ("Plaintiff was directed to disobey and/or disregard applicable local,

state, and OSHA safety regulations concerning confined space entry.").) If he in fact had any other complaints while working for Defendant, they simply do not have anything to do with the actual claims he made against Defendant in the Complaint.[2] His claim for relief is unambiguously and exclusively related to the confined space issue.

Finally, to the extent that Plaintiff is suggesting that the confined space claim is also covered by state and local statutes beyond OSHA, and it is far from certain that he is, it is of no import. There is no indication as to what these other statutes are, no indication of how they were violated, and more importantly, no indication of how this alters the analysis. Plaintiff had a remedy under OSHA for all confined space claims and this precludes him from proceeding in tort.

**B. Breach of Contract, Promissory Estoppel and Related Claims**

Plaintiff also seeks relief for breach of implied contract of employment, promissory estoppel, and breach of covenant of good faith and fair dealing. "Under Colorado law, an employee hired for an indefinite period of time is an at-will employee, whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action. An employer can be liable for the discharge of an at will employee, however, where an implied contract arises out of company policy and employment manuals or where an employee relies on the policies and manuals to his detriment." *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994) (internal citations omitted).

[2] To the extent that Plaintiff's affidavit discusses concerns other than confined space entry, that assertion is unsupported by his Complaint. Even if that were not true, however, it is difficult to see how the evidence could support a claim that he was fired for raising these concerns when his own affidavit says that the response to his concerns from Defendant was positive. There is no indication from the facts, in Plaintiff's affidavit or anywhere else in the record, that he was fired because of non-confined space entry complaints.

Plaintiff bases his argument that there was an implied-in-fact contract on the promises to follow the law contained in Defendant's employee handbook. (ECF No. 38 at 17.) Defendant argues that these so-called promises are "insufficient as a matter of law to establish an implied in fact contract." (ECF No. 40 at 1.) This Court agrees. Plaintiff signed an employee handbook which stated in no uncertain terms that he was an at will employee. Nothing in the record suggests that Defendant ever did anything to contradict that statement as applied to Plaintiff. No contract, in fact or implied, was created between Plaintiff and Defendant, and thus Plaintiff's claims for breach of contract are dismissed.

As Plaintiff states, even if there was no actual contract, an employee may demonstrate that conditions have been imposed upon the at will relationship based on a theory of promissory estoppel. In *Soderlun v. Public Serv. Co*., a case cited by Plaintiff to support his promissory estoppel argument, the Colorado Court of Appeals laid out the requirements for a promissory estoppel claim, saying that "to constitute an enforceable promise," an employer's statement "must either disclose a *promissory* intent or be one that the employee could reasonably conclude constituted a *commitment* by the employer." 944 P.2d 616, 620 (Colo. App. 1997) (emphases in original). The court goes on to explain that if such statement "is merely a description of the employer's present policies or a forecast of the employee's likely career progression, it is neither a promise nor a statement that could reasonably relied upon as a commitment." *Id*. The second requirement is that the employer statement also "must be sufficiently definite to allow a court to understand the nature of the obligation undertaken." *Id.* at 621.

Plaintiff, in order to meet his burden under Colorado law, must point to a specific, definite promise that Defendant made to him, one that is more than evidence of a current policy

or practice on the part of the employer. Plaintiff has not done so here. The various things he points to, which he argues *in combination* equal a promise from Defendant, are insufficient to make out a case for promissory estoppel. The fact that "Gyrodata previously provided progressive discipline to other employees" certainly does not meet the requirements as outlined above. (ECF No. 28 at 19-20.) Nor does Defendant's promise to follow the law. As noted in a previous District of Colorado case addressing this issue, "an employer's promise to prohibit unlawful conduct is illusory because the employer is required to follow the law whether it promises to do so or not." *Boeser v. Sharp*, No. 03-cv-00031-WDM-MEH, 2006 WL 898126, *7 (D. Colo. Mar. 31, 2006).

The only matter approaching a specific promise Plaintiff attempts to point to is the claim, first articulated in the Response, that he was told "by his supervisor that he needed three (3) written warnings before termination." (ECF No. 38 at 20.) The only evidence Plaintiff offers for that claim is his own deposition, where he claims that a district manager named Joel Sulzen explained to him "that there was three write-ups for the same incident." (Stout Dep. at 81:6-8.) It is clear from looking at that portion of the deposition that Plaintiff was explaining how he arrived at his understanding that Defendant had a progressive discipline policy—he does not say, in the deposition or anywhere else, that he was specifically promised either verbally or in writing that he personally would be given three warnings prior to termination. Thus, Plaintiff cannot meet the requirements for promissory estoppel. And, in any event, even if a supervisor had said something specifically implicating the nature of Plaintiff's employment status, such statement could not be perceived or interpreted as an actionable promise altering Plaintiff's employment status where the employee manual expressly states:

> An employee's status as an "at will" employee cannot be modified or changed except by a specific written agreement signed by the employee and the President of Gyrodata. No other supervisor or manager at Gyrodata has the power or authority to change and employee's "at will" employment status or to enter into an employment contract with an employee on behalf of Gyrodata.

(ECF No. 37-2 at 8.)

Plaintiff's final claim is that Defendant breached the covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing has been applied to employment relationships in Colorado where the employer expressly promised good faith and fair dealing in their manual or policies. *See, e.g.*, *Atsepoyi v. Tandy Corp*., 51 F. Supp. 2d 1120, 1124 (D. Colo. 1999); *Hyden v. Ford Motor Credit Co.*, No. 06-cv-01970-WYD-CBS, 2007 WL 1879972, at *4 (D. Colo. June 28, 2007) ("Plaintiff's breach of good faith and fair dealing claim cannot change existing terms of the contract and cannot limit an employer's right to discharge without cause unless there is an express or implied promise, independent of the covenant of good faith itself, restricting that right.") (quoting *Enriques v. Noffsinger Manufacturing Co., Inc*., 412 F.Supp.2d 1180, 1184 (D. Colo. 2006)).

In order to make out a claim for breach of the covenant of good faith and fair dealing, there has to be at least an allegation of an actual, in-fact covenant. In other words, there has to be an expressed provision or promise that the employer is supposed to have violated, and here, as outlined above, none were made to Plaintiff. This claim, which Defendant argued should be dismissed in its Motion, is simply left unaddressed by Plaintiff's Response. The Court can find no evidence of such a promise or provision in the evidence or an assertion of one in the pleadings. Plaintiff has not offered so much as a concrete allegation of a disputed material fact as to this claim, and it is therefore dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 36) is GRANTED;

2. The Clerk shall enter judgment in favor of Defendant on all claims; and

3. The trial preparation conference set for September 16, 2013 and the trial set for September 30, 2013 are each VACATED.

DATED this 27th day of August, 2013.

BY THE COURT:

______________________________
RAYMOND P. MOORE
United States District Judge